<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TORELL BROWN and NAIM ALLEN, <br><br> Plaintiffs, <br><br> v. <br><br> HUDSON COUNTY NEW JERSEY, *et al.*, <br><br> Defendants. | No. 24cv3948 (EP) (AME) <br><br> **OPINION** |

**PADIN, District Judge.**

*Pro se* plaintiffs Torell Brown and Naim Allen, pretrial detainees in the Hudson County Jail ("HCJ"), New Jersey, filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendants Hudson County, HCJ Director Becky Scott, and HCJ Head of Nurses Maxim Casas. D.E. 1 ("Compl." or "Complaint"). Allen moves for the appointment of *pro bono* counsel. D.E. 4. Because Plaintiffs have been granted *in forma pauperis* ("IFP") status, D.E. 3, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2).

For the reasons below, the Court will **DISMISS** *without prejudice* the Complaint but will grant leave to amend. The Court will **DENY** *without prejudice* Allen's motion for *pro bono* counsel.

**I.     BACKGROUND**

Plaintiffs challenge HCJ's response to the COVID-19 pandemic. Compl. at 7. They assert Defendants "failed to protect the health and safety" of the detainees because there was no "active policy or protocol to address the health and safety conditions." *Id.* Brown alleges he was exposed

from May 13, 2021 to February 2024, and Allen alleges he was exposed beginning on September 29, 2021. *Id.* Brown states that he contracted COVID-19 and was isolated and quarantined in a separate unit. *Id.* He also asserts that he took a blood test upon his arrival in May 2021, but for two years was not informed of the results allegedly showing that he was diabetic. *Id.* at 9. Plaintiffs allege that their unit was locked down between July and November 2023 by Scott and Casas. *Id.* at 7. They state that they both suffer from shortness of breath, fatigue, brain fog, weight loss, and loss of taste and smell. *Id.* at 11.

Plaintiffs claim Hudson County is liable for "facilitating this dysfunctional operation at" HCJ. *Id.* at 14. They state that there were no policies posted in the HCJ and that Hudson County "intentionally disregarded substantial safety or medical needs" by "knowingly refus[ing] to address prisoner safety concerns." *Id.* at 12.

## II. LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires a district court to *sua sponte* screen a civil complaint filed by a prisoner proceeding IFP for cognizable claims and to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from suit. 28 U.S.C. § 1915(e)(2).

To survive a *sua sponte* screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the plaintiff's claims are facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action

2

will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim." *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023). Moreover, "[c]omplaints filed *pro se* should be construed liberally and held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III.   ANALYSIS

Plaintiffs assert that Defendants Scott and Casas failed to protect them from exposure to COVID-19. Compl. at 16. The Court construes this as a claim that Plaintiffs were subjected to unconstitutional punishment in violation of the Fourteenth Amendment's Due Process Clause and the New Jersey Constitution and New Jersey Civil Rights Act ("NJCRA"). *Id.* at 5. Brown asserts an additional claim against Casas for denial of medical care, alleging that he was not informed of his diabetes diagnosis for two years. *Id.* at 9. Finally, Plaintiffs allege that Hudson County is liable for "facilitating this dysfunctional operation at" HCJ. *Id.* at 14.

### A.   Plaintiffs Have Not Stated an Unconstitutional Punishment Claim

Detainees may not be punished before adjudications of guilt. *Hope v. Warden York County Prison*, 972 F.3d 310, 325 (3d Cir. 2020). "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) ("*Hubbard II*")). The question turns on whether conditions are "'reasonably related to a legitimate governmental objective.'" *Id.* (quoting *Hubbard II*, 538 F.3d at 236) (alteration in original). If detainees "are subject to conditions unrelated to a legitimate governmental objective,"

3

courts may "may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees *qua* detainees." *Id.* (cleaned up). Courts must "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* (citing *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (3d Cir. 2005) ("*Hubbard I*")).

Plaintiffs argue that Scott and Casas subjected them to unconstitutional conditions of confinement because they did not institute protocols to prevent the spread of COVID-19. Compl. at 7. They assert Scott and Casas became "lazy or carefree during the second wave," which resulted in Plaintiffs contracting COVID-19. *Id.* at 13.

Although "[e]xposure [to COVID-19] alone does not establish a constitutional violation," *Graham v. Aviles*, 2022 WL 16949131, at *4 (D.N.J. Nov. 14, 2022), and a jail is not required to completely eliminate the risk of exposure to comply with constitutional mandates, *Hope*, 972 F.3d at 330, Plaintiffs allege that they contracted COVID-19, as opposed to only being exposed. However, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation when evaluating a detention facility's protocols. *Id.* at 326; *see also Jones v. Ellis, et al.*, No. 21-13625, 2021 WL 5015921, at *3 (D.N.J. Oct. 28, 2021) ("[A] detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the requisite mental state, which is akin to recklessness."). Plaintiffs' Complaint falls short of this standard.

"The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference that 'shocks the conscience' for a substantive due process violation." *Hope*, 972 F.3d at 330.  According to the Complaint, detainees who tested positive for COVID-19 were isolated and quarantined.  Compl. at 7.  Scott and Casas also implemented a 24-hour lockdown for several months, including during the alleged "second wave" of COVID-19 in November 2023.  *Id.*  Masks were distributed, positive detainees were not permitted to attend in-person court proceedings,[1] and detainees were given tablets "to do visits, law library, and other news and entertainment . . . and even a medical request by remote." *Id.* at 9, 14.  "The government has a legitimate government purpose in quarantining inmates exposed to COVID-19 to prevent further spread of the virus."  *Brinson v. Aviles*, No. 22-5389, 2023 WL 3867241, at *3 (D.N.J. June 7, 2023).

The failure to post a specific policy in the units does not rise to the level of a constitutional violation when considered in tandem with the measures that were taken at HCJ.  *See* Compl. at 14; *Mills v. Bd. of Chosen Freeholders*, No. 22-6450, 2023 WL 24357, at *3 (D.N.J. Jan. 3, 2023) ("Based on Plaintiff's allegations, [HCJ] had a COVID-19 testing policy, quarantine policy, and treatment policy.").  Plaintiffs essentially criticize Scott and Casas for a "lack of 'effective containment measures,' and for not doing 'nearly enough' to combat COVID-19 [but] those critiques are not tantamount to establishing the [Defendants'] deliberate indifference." *Hope*, 972 F.3d at 330.  "[I]mperfections in masking, testing, and quarantining procedures—particularly in the challenging environment of a detention center—do not, without more, amount to

---

[1] The Court does not interpret this as a separate access-to-the-courts claim because there are no facts suggesting that Plaintiffs' court dates were cancelled or that they were injured as a result. *See Conrad v. De Lasalle*, 2021 WL 4593273, at *4 (D.N.J. Oct. 6, 2021) ("An actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts.").

5

unconstitutional conditions of confinement or punishment." *Lawson v. Hudson Cnty. Bd. of Freeholders*, No. 22-4340, 2023 WL 6971540, at *11 (D.N.J. Oct. 23, 2023). "The unsanitary conditions alleged . . . are not excessive in light of the difficulties in operating a detention facility during a pandemic, where staff is likely stretched thin due to illness and extra duties during the pandemic." *Mills*, 2023 WL 24357, at *3. Therefore, the Court will **DISMISS** *without prejudice* the unconstitutional punishment claim against Scott and Casas. 28 U.S.C. § 1915(e)(2)(B)(ii).

> B. **Plaintiffs Have Not Alleged a Claim Against Hudson County**

Plaintiffs seek to hold Hudson County accountable for the allegedly unconstitutional conditions at the HCJ. Compl. at 14. As a municipality, Hudson County "cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "Liability is imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the moving force behind the constitutional tort of one of its employees." *Id.* (internal quotation marks omitted).

> 1. *Hudson County's policy of accepting detainees does not violate the Constitution*

In addition to the failure to adopt a COVID-19 policy, Plaintiffs allege that Hudson County's policy of accepting detainees from other counties "invigorated the spread of the virus . . . ." Compl. at 14. This policy is not unconstitutional on its face. "Transferring detainees to Hudson County, a facility that had more space after it ceased housing immigration detainees, is not a constitutional violation, and may even be seen as a salutary measure for reduction of crowding. . . . [M]any factors that go into transfer decisions and the timing of inmate transfers,

6

including safety and security concerns, and the availability of staff and resources." *Lawson*, 2023 WL 6971540, at *9. "An allegation that the transfers were scheduled at a time that was not optimal for COVID safety is not a sufficient basis to support a constitutional violation." *Id.*

As the policy is not *per se* unconstitutional, Plaintiffs can only state a claim based on this policy if they provide facts that suggest the policy was the moving force behind their injuries. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). "[C]ausation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Id.* (second alteration in original) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)).

"A successful *Monell* claim must . . . establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom." *Hargrove v. City of Philadelphia*, 671 F. Supp. 3d 595, 605 (E.D. Pa. 2023); *see also Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407, 419 (E.D. Pa. 2023) ("The existence of an underlying constitutional violation is implicit in any *Monell* claim."). Here, Plaintiffs have not provided enough facts for the Court to reasonably infer that the conditions at the HCJ violated their constitutional rights. "Absent a plausible violation of [their] constitutional rights, no municipality liability may arise as to [Plaintiffs'] claims." *Est. of Andujar by Kincaide v. Cnty. of Cumberland*, 2023 WL 4784214, at *11 (D.N.J. July 27, 2023) (citing *Smith v. Gransden*, 553 F. App'x 173, 178 (3d Cir. 2014)). Therefore, the Court will **DISMISS without prejudice** the *Monell* claim based on Hudson County's policy of accepting detainees from other counties. 28 U.S.C. § 1915(e)(2)(B)(ii).

7

> 2. *Hudson County's failure to adopt a specific COVID-19 policy does not support Monell liability*

Plaintiffs also seek to impose *Monell* liability on Hudson County for its failure to adopt an effective COVID-19 policy. Compl. at 14. The Third Circuit has applied the standards for "failure-to-train cases to other claims of liability through inaction . . . ." *Berg*, 219 F.3d at 276. To plead such a claim, Plaintiffs must provide facts that suggest the "city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (alterations in original)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (cleaned up).

To support their assertion that Hudson County disregarded the risk posed by COVID-19, Plaintiffs rely on the fact that there are "well litigated cases addressing protocols and mandates, directives, etc." regarding different New Jersey county jails. Compl. at 16. Those cases, which Plaintiffs do not identify, are based on the alleged conditions of those counties' jails and the alleged actions of those counties' employees. Plaintiffs are required to provide facts that would support an inference that Hudson County knew the HCJ employees were ill-equipped to respond to

8

COVID-19 but ignored that risk. They have not done so. Therefore, the Court will **DISMISS** *without prejudice* the *Monell* claim based on Hudson County's failure to adopt an effective COVID-19 policy. 28 U.S.C. § 1915(e)(2)(B)(ii).

    **C.**    **Brown Has Not Alleged a Denial of Medical Care Claim Against Casas**

Brown separately alleges that Casas, in her supervisory capacity, violated his constitutional rights when HCJ medical staff did not inform him for two years that he was diabetic. Compl. at 11.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)) (alteration in original). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Id.*

There are no facts in the Complaint from which the Court could reasonably infer that Casas either established a policy, practice, or custom or directed the HCJ medical staff to withhold the results of the blood test from Brown. Accordingly, the Court will **DISMISS** *without prejudice* Brown's individual claim against Casas. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

9

**D.     Plaintiffs Have Not Stated an NJCRA Claim**

Plaintiffs also assert NJCRA claims. Compl. at 5. "The [NJCRA] was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "This district has repeatedly interpreted [the] NJCRA analogously to § 1983. Therefore, the Court will analyze [Plaintiffs'] NJCRA claims through the lens of § 1983." *Id.*

The Court has concluded that Plaintiffs have not stated claims pursuant to § 1983. Accordingly, the Court will **DISMISS** *without prejudice* the NJCRA claims. 28 U.S.C. § 1915(e)(2)(B)(ii).

**E.     The Court Will Deny Allen's Motion for Counsel Without Prejudice**

Allen moves for the appointment of pro bono counsel. D.E. 4. Appointment of counsel is a privilege, not a statutory or constitutional right, *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011), and is governed by the factors enumerated in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). In determining whether to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim." *Tabron*, 6 F.3d at 155.

Allen fails to meet this threshold inquiry because he has failed to state a claim for relief pursuant to Section 1983. The Court will **DENY** *without prejudice* the motion to appoint counsel.

**F.     The Court Will Grant Leave to Amend**

Generally, "[a] plaintiff[ ] who file[s a] complaint[ ] subject to dismissal under [Section 1915] should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Because Plaintiffs may be able to allege facts that would cure the deficiencies identified above, the Court will grant Plaintiffs 45 days to submit a proposed Amended Complaint. The proposed Amended Complaint will be subject to this

Court's Section 1915 review prior to service. Failure to submit a proposed Amended Complaint within 45 days of the accompanying Order will result in dismissal of all claims with prejudice.[2]

## IV. CONCLUSION

For the reasons stated above, the Court will **DISMISS** *without prejudice* the Complaint for failure to state a claim but will grant leave to amend. The Court will **DENY** *without prejudice* Allen's motion for pro bono counsel.

An appropriate Order accompanies this Opinion.

9/5/2024
Date

Evelyn Padin, U.S.D.J.

---

[2] Plaintiffs should note that the Amended Complaint will supersede the Complaint. When the Amended Complaint is filed, the Complaint becomes inoperative and cannot be utilized to cure the Amended Complaint's defects unless the relevant portion is specifically incorporated. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). The Amended Complaint may adopt some or all the allegations, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an Amended Complaint that is complete in and of itself. *Id.*

11